UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KENNETH BURGESS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:21-cv-2426 |
| ) | |
| CITY OF CONNERSVILLE, INDIANA, ) | |
| ) | |
| Defendant. ) | |

**Complaint for Declaratory and Injunctive Relief**

**Introduction**

1. The John Roberts Memorial Building ("Building") is a multi-story building owned by the City of Connersville and used for public meetings and community events, as well as being available to rent for private functions. Its lower and upper floors are connected by a platform lift that fails to comply with the relevant requirements of the Americans with Disabilities Act, 42 U.S.C. § 12132, *et seq.* Kenneth Burgess is a person with a disability who has occasion to attend events at the Building and has difficulty accessing the top floor of the building where the events occur. He is entitled to injunctive and declaratory relief to require defendant to bring the Building into compliance with the Americans with Disabilities Act.

**Jurisdiction, venue, and cause of action**

2. This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

3.Venue is proper in this district pursuant to 28 U.S.C. § 1391.

4.Declaratory relief is authorized by 28 U.S.C. § 2201 and § 2202 and by Rule 57 of the Federal Rules of Civil Procedure.

5.This action is brought pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12133.

**Parties**

6.Kenneth Burgess is an adult resident of Connersville, Indiana.

7.Connersville, Indiana is a city in the east-central portion of Indiana and is the county seat of Fayette County.

**Legal background**

8.Title II of the ADA, which applies to public entities, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

9.Regulations promulgated to enforce the ADA provide that if a public building is altered, as opposed to newly constructed,

> Each facility or part of a facility altered by, on behalf of, or for the use of a public entity in a manner that affects or could affect the usability of the facility or part of the facility shall, to the maximum extent feasible, be altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities, if the alteration was commenced after January 26, 1992.

28 C.F.R. § 35.151(b)(1).

10. The regulations further provide that alterations made after March 15, 2012, must comply with the 2010 ADA Standards for Accessible Design, which consist of the requirements set forth in 28 U.S.C. § 35.151 and the ADA Accessibility Guidelines ("ADAAG"), which can be found at appendices B and D to 36 C.F.R. part 1191. 28 C.F.R. § 35.151(c); 28 C.F.R. § 35.104 (Definitions: "2010 Standards" and "2004 ADAAG").

11. The 2004 ADAAG standards generally require that platform lifts have power operated doors or gates. 36 C.F.R. part 1191, Appendix D, § 410.6. The doors must remain open for a minimum of 20 seconds. *Id.* However, platform lifts that serve only two landings and have doors or gates on opposite sides need not have power operated doors or gates, but the doors or gates must be self-closing. *Id.*

**Factual allegations**

12. The Building is a two-story structure, owned by the City of Connersville, which is used for public meetings and other public events. It is also available to rent for private events.

13. It is located within Roberts Park, a large green space owned and operated by the City of Connersville.

14. Although the Building was erected decades ago, in approximately 2013, after being vacant for many years, it was substantially renovated by the City with changes to the interior, and with the addition of new windows, a new roof, and a new HVAC system.

15. The first floor of the building is partly below ground level. Its second floor is therefore more like a mezzanine than a full second story.

16. The public part of the Building is on the upper floor, which contains a meeting room.

17. Prior to the Building's renovation, there was a ramp that went to a door on the upper floor.

18. However, the ramp was extremely steep and was not compliant with the requirements of the ADA and was exceedingly dangerous to use.

19. The ramp was removed during the renovation.

20. During the renovation the City of Connersville installed a one-person wheelchair lift to allow persons with mobility impairments to access the upper floor of the building. It is pictured below.



[4]

21.     The lift does not have electric doors. Nor do the doors automatically close all the way, although they do quickly close part way.

22.     In fact, typed instructions on the door of the lift state that a person seeking to go up in the lift must pull the door open and close the door behind the person. The instructions are pictured below.



23. Similarly, the instructions note that if the person desires to go down the person must pull the door open and close the door behind him or her.

24. Prior instructions, since removed, stated in three different paragraphs, referring to the lift doors: "You have to pull hard, the door sticks."

25. The lift is small and if a person is in a wheelchair the person must roll in, facing the opposite door of the lift, and reach behind him or her to close the door.

26. This is difficult, if not impossible, to do when the person is in a wheelchair and the wheelchair cannot turn because of the small size of the lift.

27. The doors also do not remain open for any time upon entry but immediately start to swing partially closed. This requires persons in a wheelchair to try to hold the doors open with one arm while they also try to enter the lift using another arm, while at the same time going up the ramp on the bottom floor to enter the lift. This is difficult.

28. Unlike an elevator, the lift will not move unless the lift button is continuously depressed.

29. It is difficult and awkward, if not impossible, for many persons with disabilities to maintain this continuous contact.

30. At the top of the lift there is a landing and the exterior door to the upper story of the Building.

31. Near this door is a metal plate that can be pushed to open the door electronically.

32. This is not the door used to reach the upper floor by persons without disabilities. These persons access the upper floor by the means of stairs on the exterior and interior of the building.

33. Kenneth Burgess is a paraplegic and has been confined to a wheelchair for decades. He is unable to walk.

34. He is active in his community and has attended meetings at the Building and wishes to continue to attend meetings at the Building in the future.

35. For example, in the past he has gone to the Building to attend a meeting of the sewer board, park board meetings, and a meeting concerning the City's comprehensive plan.

36. He also has attended public events featuring his grandchildren that were held in the Building.

37. In the past he has attended bluegrass concerts that were held in the Building.

38. All of the above meetings and events were held on the upper floor of the Building and required Mr. Burgess to use the lift.

39. Mr. Burgess has difficulty using the lift.

40. Among other things, he has difficulty reaching behind himself to pull the lift doors closed and make sure they are latched as they are not self-closing and are not easy to close when he is unable to move his wheelchair in the lift because of its small size. Each time he has been in the lift he has experienced the fact that the doors to the

lift stick and require force to close. This is awkward for him, and he recognizes that it may be impossible for many persons with disabilities.

41.     Moreover, he has difficulty even entering the lift. He uses a manual wheelchair and has to open the door on the ground floor and then roll away down a ramp to allow it to open. It will then swing shut and he has to prop the door open with one elbow while he wheels himself, up the ramp, into the lift on the ground floor. There is no ramp on the upper floor, but he still has to try to prop the door open with one arm, while wheeling himself into the lift with his other arm when he tries to descend.

42.     Mr. Burgess also has difficulty in maintaining the continuous pressure necessary to make the lift ascend or descend. This is particularly so because the lift moves very slowly, and he must therefore apply this continuous pressure for a lengthy period of time.

43.     When Mr. Burgess attempted to attend the sewer board meeting in May or June of this year, the door on the upper floor of the Building would not open when Mr. Burgess pushed the button designed to automatically open the door. He ended up having to pound on the door to attract someone's attention.

44.     This was extremely embarrassing.

45.     On at least two other occasions in the last two years when Mr. Burgess ascended to the upper floor in the lift, the door to the interior of the Building, which is supposed to automatically open when the button is depressed, would not open, and he could not

enter and had to beat on the door to have someone open the door for him from inside the Building. Again, this was extremely embarrassing.

46. Plaintiff has discussed with City officials the possibility of putting an ADA accessible ramp to the upper floor in lieu of the lift. Plaintiff believes that this is architecturally feasible, and he was under the impression that City officials were considering this, but no steps have been taken to install the ramp.

47. There is no other way to access the upper floor of the building without being required to climb stairs.

48. The Building is not readily accessible to and usable by individuals with disabilities, and the lift does not comply with the applicable standards imposed by the ADA.

49. Mr. Burgess is being caused irreparable harm for which there is no adequate remedy at law.

**Legal claim**

50. The John Roberts Memorial Building is not readily accessible to persons with disabilities, including Kenneth Burgess, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12132.

**Request for relief**

WHEREFORE, plaintiff requests that this Court:

a. Accept jurisdiction of this case and set it for hearing at the earliest opportunity.

b.	Declare that defendant is violating the Americans with Disabilities Act as noted above.

c.	Enter a preliminary injunction, later to be made permanent, enjoining defendant to make the John Roberts Memorial Building readily accessible to persons with disabilities as required by the Americans with Disabilities Act.

d.	Award plaintiff his costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 12133.

e.	Award all other proper relief.

Kenneth J. Falk
Stevie J. Pactor
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
kfalk@aclu-in.org
spactor@aclu-in.org

Attorneys for Plaintiff
